IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

FREDERICK KLAAS, on behalf of himself and all
others similarly situated,

|  |  |  |
|---|---|---|
| | Plaintiff, | OPINION and ORDER |
| v. | | |
| | | 21-cv-820-jdp |
| IGT GLOBAL SOLUTIONS CORPORATION, | | |
| | Defendant. | |

---

This case is about a game called "Badger 5," which is sponsored by the Wisconsin Lottery and involves picking five numbers between 1 and 31 in an attempt to match the five numbers randomly generated by the Lottery each day. Plaintiff Frederick Klaas is a fan of the game: he has purchased more than 1,800 tickets over the last three years. But Klaas wants all of his money back now because the terminals that issued the tickets he purchased didn't generate random numbers as they should have, as shown by approximately 50 pairs of tickets he purchased that contain the same five numbers.

Klaas isn't questioning the randomness of the winning lottery numbers themselves, and he doesn't allege that the alleged lack of randomness of his ticket numbers decreased his chances of winning the game. But he says that defendant IGT Global Solutions Corporation—the company that is responsible for the terminals—owed him a duty to provide randomly generated numbers on his tickets, both as a matter of contract and under tort law. He seeks to represent a class of all persons who purchased a Badger 5 ticket in the last three years using a terminal that generated the numbers to be played.

IGT moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which may be granted. Dkt. 4. For the purpose of its motion, IGT

assumes as true that at least some of the numbers Klaas received from the terminals were not randomly generated. But IGT contends that Klaas failed to state claim for either breach of contract or negligence.

Klaas's complaint must be dismissed for multiple reasons. Most fundamentally, Klaas hasn't identified any way that he has been harmed. He says only that he has a "right" to random numbers. Even if that were correct, it wouldn't be enough to give Klaas standing to sue, which requires a concrete harm. But it isn't correct in any event. Klaas is simply wrong that the Wisconsin Constitution requires a lottery player's numbers to be random. Klaas also says that IGT's contract with the state requires randomness, but even if that is true, Klaas doesn't have a right to sue under that contract. And Klaas can't rely on tort law to impose a duty on IGT in the absence of an unreasonable risk of harm.

ANALYSIS

**A.  Standing**

One of IGT's primary arguments is that Klaas hasn't identified any harm that he suffered as result of receiving numbers that may not have been randomly generated. IGT frames this as a merits issue, namely, that Klaas hasn't alleged all the elements of his negligence claim. But a failure to allege harm is more than just a failure to state a claim on the merits; it is a failure to show that the plaintiff has standing to sue, which is one of the requirements for subject matter jurisdiction. *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1057 (7th Cir. 2018). That's an issue that the court must address regardless of whether the parties raise it, *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020), so the court will consider standing first.

Klaas has standing if he shows three things: (1) he suffered an injury in fact; (2) the injury is fairly traceable to the challenged conduct of the defendant; and (3) the injury is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016). At the pleading stage, the question is whether Klass has plausibly alleged the elements of standing, meaning that it is reasonable to infer from his allegations that he meets the elements. *See Silha v. ACT, Inc.,* 807 F.3d 169, 173–74 (7th Cir. 2015).

Klaas identifies his injury as the money he paid for his tickets. Financial injuries generally qualify as an injury in fact, *see TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021), but Klaas doesn't explain why the cost of his tickets is fairly viewed as an injury under the circumstances of this case. The Court of Appeals for the Seventh Circuit has recognized overpayment for a defective product as an injury in fact, based on a view that the plaintiffs didn't receive the benefit of their bargain. *See Flynn v. FCA US LLC*, 39 F.4th 946, 949 (7th Cir. 2022); *In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011). But this theory of harm applies only when the plaintiffs allege that they wouldn't have purchased the product or would have paid less for it had they known about the defect. *See id.* If the plaintiff would have paid the same price for the product even with the defect, then the alleged "injury" isn't fairly traceable to the defendant's conduct; rather, it's the simply the result of the plaintiff's own decision to purchase the product.

In this case, Klaas doesn't allege that his purchase of the lottery tickets was contingent on a belief that he was receiving randomly generated numbers. And any such allegation would be dubious in light of his allegation that he received the same numbers dozens of times but still continued to buy tickets. Even now, Klaas doesn't allege that he stopped using terminals to generate Badger 5 numbers. Klaas also doesn't allege that IGT represented to him that he

would receive randomly generated numbers or even that he knew that terminals were supposed to produce randomly generated numbers. Without a causal connection between the decision to make a purchase and a belief that the numbers were randomly generated, Klaas doesn't have standing.

Even assuming that Klaas could cure the above pleading deficiencies with an amended complaint, there is a more fundamental problem. Specifically, an injury based on a benefit-of-the-bargain theory requires the plaintiff to actually identify a defect with the product. *Lewert v. P.F. Chang's China Bistro, Inc*., 819 F.3d 963, 968 (7th Cir. 2016); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 695 (7th Cir. 2015). The harm caused by the defect "is calculated as the difference in value between what was bargained for and what was received." *McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705–06 (9th Cir. 2020); *In re Johnson & Johnson Talcum Powder Prod. Mktg., Sales Prac. & Liab. Litig.*, 903 F.3d 278, 283 (3d Cir. 2018); *accord Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019).

In this case, Klaas doesn't explain in his complaint or his brief how any lack of randomness affected the value of his ticket. As IGT points out repeatedly, and as Klaas confirms in his brief, Dkt. 12, at 1–2, Klaas isn't alleging that the winning lottery numbers were chosen nonrandomly or that his chances of winning the game were lower because his numbers weren't random. Regardless of the numbers he chose, his chances of winning were approximately 1 in 169,000. Dkt. 1-1, ¶ 23. Klaas also fails to point to any other benefit that he should have received but didn't. His only argument is that he had a "constitutionally protected right to 'randomly predetermined' numbers." *Id.*, ¶ 26.

By itself, the violation of a right, even a constitutionally protected right, doesn't give a party standing to sue. *See, e.g, Ramirez*, 141 S. Ct. at 2205; *Valley Forge Christian Coll. v. Ams.*

*United for Separation of Church & State*, Inc., 454 U.S. 464, 485–86 (1982) But even if it did, Klaas hasn't identified any rights that IGT violated, constitutional or otherwise. The court will turn to that issue next.

## B. Merits

Even if Klaas had standing to sue, his claims would fail on the merits. He asserts two legal theories: (1) breach of contract; and (2) negligence. He doesn't state a claim under either theory.

### 1. Breach of contract

Klaas doesn't contend that IGT breached a contract it had with him. Rather, Klaas alleges that IGT breached a contract with the state of Wisconsin that required IGT to "provide Lottery terminals with random number generators for each terminal." Dkt. 1-1, ¶ 11.

The general rule is that only a party to a contract may enforce it. *Sussex Tool & Supply, Inc. v. Mainline Sewer & Water, Inc.*, 231 Wis. 2d 404, 605 N.W.2d 620, 622–23 (Ct. App. 1999). But Klaas relies on an exception to the rule for third-party beneficiaries. A person may enforce a contract as a third-party beneficiary if the contract indicates that he or she was either specifically intended by the contracting parties to benefit from the contract or is a member of the class the parties intended to benefit *Milwaukee Area Tech. Coll. v. Frontier Adjusters of Milwaukee*, 2008 WI App 76, ¶ 20, 312 Wis. 2d 360, 377, 752 N.W.2d 396, 404. The contract must show the parties' intent to "directly and primarily" benefit the third party. *Schilling by Foy v. Empl'rs Mut. Cas. Co.*, 212 Wis. 2d 878, 569 N.W.2d 776, 780 (Ct. App. 1997). An indirect or incidental benefit isn't enough. *Id.*

In the context of a public contract, the standard is more restrictive, particularly in a case like this one seeking damages, because the primary purpose of a public works contract is to

benefit the public. *Becker v. Crispell-Snyder, Inc.*, 2009 WI App 24, ¶¶ 11–12, 316 Wis. 2d 359, 367, 763 N.W.2d 192, 196. Specifically, the Wisconsin Court of Appeals adopted the Restatement (Second) of Contracts § 313, which requires specific language in the contract showing an intent by the defendant to assume liability for damages to third parties like the plaintiff. *Sussex Tool & Supply, Inc. v. Mainline Sewer & Water, Inc.*, 231 Wis. 2d 404, 416, 605 N.W.2d 620, 626 (Ct. App. 1999).

Klaas hasn't come close to meeting that standard in this case. He cites one provision of the contract: "The terminal [at the point of sale] shall produce tickets for all Lotto games using player selected numbers, random Play (quick picks), sequential Play and manual entry." Dkt. 12, at 2. On its face, this provision doesn't require randomly generated numbers for every ticket generated at a terminal. But even if the reference to "random Play" is construed as a promise of randomness, it isn't reasonable to infer from that language that all lottery ticket purchases have a right to sue IGT for damages any time IGT violates a provision in a contract that is more than 3,000 pages long. Dkt. 6.

Klaas's allegation that the contract uses the word "player" 773 times adds nothing. It doesn't matter how many times a contract mentions a group if there isn't accompanying language evincing an intent to allow that group to assert rights against the contracting party. *See*, *e.g.*, *D'Amato v. Wisconsin Gas Co.*, 760 F.2d 1474, 1479 (7th Cir. 1985) (disabled employee wasn't a third-party beneficiary of a public contract that required the employer to implement affirmative action policies for disabled employees); *Schilling*, 212 Wis. 2d at 895 (student wasn't a third-party beneficiary of a public contract that included responsibilities for student safety).

Klaas argues in the alternative that § 313 shouldn't apply because it's inconsistent with the Wisconsin Constitution. He cites § 313(1), which states that the stricter standard shouldn't apply if it "would contravene the policy of the law authorizing the contract." Klaas contends that IGT has violated the policy contained in Article IV, § 24(6)(b) of the Wisconsin Constitution, but that's simply incorrect. Section 24(b)(6) says that lottery players have the option of using numbers "selected by a computer," but it doesn't say that the selection must be random. Klaas quotes the requirement in § 24(b)(6) that the lottery be a "game of chance," but Klaas's allegations don't show a violation of that requirement. Regardless of whether a ticket purchaser's numbers are random, Badger 5 is still a "game of chance" so long as the winning numbers are selected randomly. If Klaas's view were correct, it would be unconstitutional for players to choose their own numbers, which is expressly permitted by § 24(b)(6).

In sum, Klaas doesn't point to any language in the contract supporting a view that lottery players are third-party beneficiaries in the contract between IGT and the state. So Klaas's allegations don't state a claim for breach of contract.

## 2. Negligence

A negligence claim has four elements: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Rockweit v. Senecal*, 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995). If the plaintiff satisfies those elements, the court must consider six "public policy factors" that may preclude liability, including whether "[a]llowing recovery would enter a field that has no sensible or just stopping point." *Fandrey ex rel. Connell v. Am. Fam. Mut. Ins. Co.*, 2004 WI 62, ¶ 1 n.1, 272 Wis. 2d 46, 680 N.W.2d 345.

7

A person breaches his or her duty of care if he or she acts or fails to act in a way that a reasonable person in similar circumstances would recognize as creating an unreasonable risk of injury or damage to a person or property. *Hoida, Inc. v. M & I Midstate Bank*, 2006 WI 69, ¶ 30, 291 Wis. 2d 283, 306, 717 N.W.2d 17, 28–29. In this case, Klaas contends that a reasonable person would recognize that a terminal issuing tickets with nonrandom numbers creates an unreasonable risk of harm to Badger 5 players because the state constitution and the IGT's contract with the state incorporate a duty to provide random numbers. But the court has explained that the state constitution contains no such duty, and the contract isn't intended to create any rights for lottery players. If the court were to recognize a duty on IGT under these circumstances, it would allow any party to convert a failed third-party beneficiary claim into a tort claim. The court declines to impose such a duty.

Even if the meaning of ordinary care could be stretched to prohibit what Klaas is alleging, the court would conclude that Klaas's negligence claim was barred by public policy. There would be no sensible or just stopping point if Klaas's allegations stated a claim for negligence. It would allow any Wisconsin resident to comb through any public contract providing an incidental benefit to him or her and then sue for any alleged violation of the contract even in the absence of real harm. That's not the purpose of tort law, so the court concludes that Klaas hasn't stated a claim for negligence.

ORDER

IT IS ORDERED that defendant IGT Global Solutions Corporation's motion to dismiss, Dkt. 4, is GRANTED and the case is DISMISSED without prejudice for lack of subject

8

matter jurisdiction. The clerk of court is directed to enter judgment accordingly and close this case.

Entered August 15, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge